No. 24-1784

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

UNITED STATES OF AMERICA,
Appellee

vs.

ROSS ROGGIO
Appellant

_____

## APPEAL FROM JUDGMENT OF CONVICTION AND SENTENCE IN
## <u>U.S. District Court M.D. Pa</u>. and docketed to: <u>3:18-CR-97</u>.

_____

## <u>BRIEF FOR APPELLANT</u>
## <u>AND APPENDIX VOLUME I</u>

Date:  February 18, 2026

William J. Watt, III, Esquire
Attorney ID No.: #206831
SAPORITO, FALCONE & WATT
48 S. Main St., Suite 300
Pittston, PA 18640
Tel: 570-654-4643
Bill@SFWlawyers.com
*Counsel for Appellant*

# **TABLE OF CONTENTS**

**TOPIC**                                                                 **PAGE**

Table of Contents ............................................................    i

Table of Authorities ........................................................    iv

Statement of Jurisdiction..................................................    1

Statement of the Issues Presented for Review ................................    2

Statement of the Case.......................................................    6

Statement of Related Cases……………………………………    10

Summary of Argument....................................................    11

Argument:

I.    THE WARRANTLESS SEIZURE AND FORENSIC
      SEARCH OF MR. ROGGIO'S ELECTRONIC DEVICES
      VIOLATED THE FOURTH AMENDMENT……………......….14

II.   THE DISTRICT COURT ABUSED ITS DISCRETION BY
      ADMITTING EXTENSIVE, GRAPHIC EVIDENCE OF
      UNCHARGED VIOLENT CONDUCT UNDER A
      MISAPPLIED "INTRINSIC EVIDENCE" THEORY, IN
      VIOLATION OF FED. R. EVID. 404(b) AND 403 ....................20

III.  THE DISTRICT COURT FAILED TO GIVE A
      MEANINGFUL LIMITING INSTRUCTION

GOVERNING THE JURY'S USE OF THE
UNCHARGED VIOLENCE ........................................................... 26

IV.    THE DISTRICT COURT VIOLATED THE SIXTH
AMENDMENT CONFRONTATION CLAUSE BY
ADMITTING OUT-OF-COURT ACCUSATORY
CONTENT THROUGH SURROGATE
TESTIMONY ................................................................................ 28

V.    THE DISTRICT COURT VIOLATED THE
CONFRONTATION CLAUSE BY ADMITTING
TESTIMONIAL EMAILS OF A NON-TESTIFYING
DECLARANT UNDER A "CONTEXT"
RATIONALE.................................................................................. 30

VI.    THE DISTRICT COURT ERRED BY GIVING A
FALSE-EXCULPATORY-STATEMENT
INSTRUCTION THAT IMPROPERLY
PERMITTED THE JURY TO TREAT A
CONTESTED DEFENSE EXPLANATION AS
CONSCIOUSNESS-OF-GUILT EVIDENCE ................................ 34

VII.    THE DISTRICT COURT CONSTRUCTIVELY
AMENDED COUNT FOUR BY AUTHORIZING
CONVICTION ON THEORIES NOT CHARGED
BY THE GRAND JURY ................................................................ 38

VIII.    THE DISTRICT COURT PERMITTED THE
GOVERNMENT TO PROVE ESSENTIAL
ELEMENTS OF THE EXPORT COUNTS
THROUGH IMPROPER LEGAL-CONCLUSION
TESTIMONY, IN VIOLATION OF FEDERAL
EVIDENCE RULES AND THE FIFTH AND SIXTH
AMENDMENTS ........................................................................... 42

IX.    THE COMBINED EFFECT OF THE TRIAL
ERRORS DEPRIVED MR. ROGGIO OF A
FUNDAMENTALLY FAIR PROCEEDING .................................. 48

X.    THE DISTRICT COURT PROCEDURALLY
      ERRED IN CALCULATING THE GUIDELINES
      RANGE..............................................................................................50


Conclusion ........................................................................ ...60


Combined Certificates....................................................... ...61


Appendices:


      Volumes I (A001 – A342)……………………………... ...........62

      Supplemental Appendix Volume II.................................. Separate

      Supplemental Appendix Volume III ................................ Separate

## <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

Government of the Virgin Islands v. Berry, <u>604 F.2d 221</u> (3d Cir. 1979) ....... ........57

United States v. Caldwell, <u>760 F.3d 267</u> (3d Cir. 2014) ............. ....21, 24, 26, 27, 29

United States v. Castro, <u>776 F.2d 1118</u> (3d Cir. 1985) ............ .............................39

Chatwin v. United States, <u>326 U.S. 455</u> (1946) .........................................57

Crawford v. Washington, <u>541 U.S. 36</u> (2004) .................................... 28-32

United States v. Cross, <u>308 F.3d 308</u> (3d Cir. 2002) ........................................22

United States v. Daraio, <u>445 F.3d 253</u> (3d Cir. 2006) ......................................39

United States v. Davis, <u>726 F.3d 434</u> (3d Cir. 2013) ............ .............................27

Gall v. United States, <u>552 U.S. 38</u> (2007) ................................................50

United States v. Green, <u>617 F.3d 233</u> (3d Cir. 2010) ......................................... 21-24

United States v. Guerrero, <u>803 F.2d 783</u> (3d Cir. 1986) ............ ......................22

United States v. Hill, <u>976 F.2d 132</u> (3d Cir. 1992) ............ ..............................49

United States v. Hinton, <u>423 F.3d 355</u> (3d Cir. 2005) ............ ...................29, 32, 34

United States v. Hoffecker, <u>530 F.3d 137</u> (3d Cir. 2008) ...........................43, 45, 47

United States v. Jimenez, <u>513 F.3d 62</u> (3d Cir. 2008) ............ .........................28

United States v. Johnson, <u>302 F.3d 139</u> (3d Cir. 2002) ............ .......................35, 38

United States v. Kemp, <u>500 F.3d 257</u> (3d Cir. 2007) .........................................35, 36

United States v. Langford, <u>516 F.3d 205</u> (3d Cir. 2008) .........................................50

United States v. Lee, 612 F.3d 170 (3d Cir. 2010) .................. 25, 26, 35, 38, 43, 48

United States v. Leo, 941 F.2d 181 (3d Cir. 1991) ............ ......................43, 46, 47

United States v. Miller, 471 U.S. 130 (1985) ...................................39, 42

United States v. Mills, 1 F.3d 414 (6th Cir. 1993) ............ ..............................52, 53

United States v. Montoya de Hernandez, 473 U.S. 531 (1985) .......................15, 19

United States v. Morena, 547 F.3d 191 (3d Cir. 2008) ............ .......21, 22, 24, 26, 27

United States v. Price, 458 F.3d 202 (3d Cir. 2006) ............ ......................29, 30, 32

United States v. Ramsey, 431 U.S. 606 (1977) .....................................................15

United States v. Repak, 852 F.3d 230 (3d Cir. 2017) ............ ..............20, 25, 26, 43

United States v. Richards, 674 F.3d 215 (3d Cir. 2012) ............ ...........................50

Riley v. California, 573 U.S. 373 (2014) ........... ......................................11, 15, 16

United States v. Sallins, 993 F.2d 344 (3d Cir. 1993) .................................29, 30, 32

United States v. Syme, 276 F.3d 131 (3d Cir. 2002) ............ .........................39, 42

United States v. Tai, 750 F.3d 309 (3d Cir. 2014) ....................................................59

United States v. Thornton, 1 F.3d 149 (3d Cir. 1993) ...........................................48

Delaware v. Van Arsdall, 475 U.S. 673 (1986) .............................................28, 30

United States v. Whitted, 541 F.3d 480 (3d Cir. 2008) ....................................15, 17

United States v. Yusuf, 461 F.3d 374 (3d Cir. 2006) ............ .................................14

**Statutes**

18 U.S.C. § 2340A ................................ ................ ..............................51, 52, 55, 57, 59

18 U.S.C. § 1201(a) ................................ ............................................................ 53, 57

18 U.S.C. § 3231 ................................ ............................................................ 1

22 U.S.C. § 2778 ................................ ............................................................ 44

28 U.S.C. § 1291 ................................ ............................................................ 1

**Constitutional Provisions**

U.S. Const. amend. IV ................................ ........................ ...................... 14, 17, 19–24

U.S. Const. amend. V ................................ ................................ ...................... 39, 42, 48

U.S. Const. amend. VI ................................ ........................ ...................... 12, 42, 48, 52

**Federal Rules of Evidence**

Fed. R. Evid. 403 ................................ .......... ................ 3, 11, 20-22, 24, 26, 27

Fed. R. Evid. 404(b) ................................ .................... 3, 7, 11, 17, 20-22, 24, 25

Fed. R. Evid. 105 ................................ .................................................. 26

**United States Sentencing Guidelines**

U.S.S.G. § 1B1.1 ............................................................... 55, 56

U.S.S.G. § 1B1.2 ..................................................................... 51

U.S.S.G. § 2A2.2 ...................... ...................... ................... 50-52, 54

U.S.S.G. § 2A4.1 ..................... ...................... ......... 5, 6, 9, 13, 50

U.S.S.G. § 2A4.1(b)(2)(B) ....................... ...................... ........ 54

U.S.S.G. § 2A4.1(b)(4)(A) ................. ...................... ........ 9, 56, 58

U.S.S.G. § 3B1.1 ........................................ ..................... 9, 58, 59

## STATEMENT OF JURISDICTION

**A. Subject Matter Jurisdiction**

The United States District Court for the Middle District of Pennsylvania had subject matter jurisdiction over this case pursuant to 18 U.S.C. §3231, which states, in pertinent part, that "[t]he district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."

**B.  Appellate Jurisdiction**

Appellant timely filed a notice of appeal on April 25, 2024 (A126), from the Judgment of the United States District Court for the Middle District of Pennsylvania, Mariani, J. (hereinafter "trial court" or "District Court"), entered on April 15, 2024.  (A118). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

### A. Issue 1

Whether the warrantless seizure and subsequent off-site forensic search of Mr. Roggio's electronic devices at JFK Airport violated the Fourth Amendment, where agents conducted a pre-planned criminal investigative search without a warrant and absent exigent circumstances.

*Preservation*: Raised in a written motion to suppress; litigated at an evidentiary hearing; denied by written Memorandum and Order. (*See* A072; A117; A314).

### B. Issue 2

Whether the District Court erred by admitting extensive testimony concerning uncharged violent conduct under an "intrinsic evidence" theory, without applying Federal Rule of Evidence 404(b) and without meaningful Rule 403 balancing.

*Preservation*: Objected raised at trial when the evidence was proffered and admitted. (A494-A499).

### C. Issue 3

Whether the District Court compounded the Rule 404(b) error by failing to provide a meaningful limiting instruction governing the jury's use of the uncharged violent conduct.

***Preservation***: Defense objected to admission of the evidence. *See* A502-A505. No contemporaneous limiting instruction was given and the jury charge did not include a tailored limiting instruction. (A157).

## D.  Issue 4

Whether the District Court violated the Confrontation Clause by admitting out-of-court accusatory content through surrogate testimony under a "description" or "not for the truth" rationale.

***Preservation***: Hearsay and Confrontation objections raised during testimony and overruled. (A502).

## E.  Issue 5

Whether the District Court violated the Confrontation Clause by admitting testimonial email communications of a non-testifying declarant (Dr. Ballina) under a "context" rationale and permitting the emails to be read to the jury.

***Preservation***: Confrontation and hearsay objections raised at trial and expressly overruled. (A512-A516).

## F.  Issue 6

Whether the District Court erred by instructing the jury that it could treat Mr. Roggio's explanation to law enforcement as a "false exculpatory statement" evidencing consciousness of guilt, where the statement constituted his substantive defense and was not independently shown to be demonstrably false.

3

***Preservation***: Defense objected during the charge conference; objection overruled; instruction delivered. (A148, 172).

## G. <u>Issue 7</u>

Whether the District Court constructively amended Count Four of the Superseding Indictment by instructing the jury that it could convict if Mr. Roggio "retransferred," "furnished," or "caused to be exported" defense articles, where the grand jury charged only that he "exported and attempted to export" those items.

***Preservation***: Defense objected at the charge conference; objection overruled; broader instruction delivered. (A199-A202, A254).

## H. <u>Issue 8</u>

Whether the District Court erred by allowing Government witnesses to testify that the charged items were "defense articles" requiring a license and that export without authorization violated federal law—thereby supplying legal conclusions on essential statutory elements—without proper expert foundation or limiting instruction.

***Preservation***: Defense objected at trial and the Court overruled the objection. (A518-A529).

## I. <u>Issue 9</u>

Whether the combined effect of the foregoing trial errors deprived Mr. Roggio of a fundamentally fair trial.

*__Preservation__*: Each underlying error was preserved as described above.

**J.  Issue 10**

Whether the District Court procedurally erred at sentencing by applying

U.S.S.G. §2A4.1 (Kidnapping, Abduction, Unlawful Restraint) as the most

analogous guideline for the torture counts and by applying the "serious bodily

injury" enhancement, the "thirty-day detention" enhancement, and aggravating role

enhancement.

*__Preservation__*: Raised in written Sentencing Memorandum (A530).

## STATEMENT OF THE CASE

**A.     Nature of the Case**

This is a criminal appeal from a judgment of conviction and sentence entered by the United States District Court for the Middle District of Pennsylvania following a jury trial.

A Superseding Indictment charged Mr. Roggio with offenses arising from alleged export-control violations, fraud-related conduct, and torture-related conduct. A jury returned guilty verdicts on all counts. The District Court thereafter imposed a term of imprisonment following application of U.S.S.G. § 2A4.1 and related enhancements. Judgment was entered, and a timely notice of appeal followed. (A034, A126).

**B.     The Charges**

The Superseding Indictment alleged, among other things, that Mr. Roggio exported and attempted to export defense articles without a license, in violation of federal export-control statutes; engaged in related fraudulent conduct; and committed acts constituting torture. (A034).

Count Four charged that Mr. Roggio "exported and attempted to export" designated defense articles without required authorization. (A055).

**C.     Pretrial Proceedings**

Prior to trial, Mr. Roggio moved to suppress evidence obtained from the seizure and forensic search of his electronic devices at John F. Kennedy International Airport. (A072). The motion argued that the warrantless seizure and off-site forensic extraction violated the Fourth Amendment.

The District Court conducted an evidentiary hearing. (A311). The Government presented testimony concerning advance coordination for secondary screening at JFK, seizure of electronic devices, transport of those devices to a forensic laboratory, and subsequent digital extraction. Id.

The District Court denied the motion in a written Memorandum and Order. (A092).

**D.    The Trial**

Trial commenced on May 8, 2023. During pretrial and trial proceedings, the Government sought to introduce testimony concerning alleged prior acts of violence by Mr. Roggio. Defense counsel objected, arguing that the evidence constituted impermissible character evidence under Federal Rule of Evidence 404(b). (A491-A496, A502). The District Court ruled that the evidence was "intrinsic" and admissible. (A502)

At trial, a witness testified regarding alleged violent conduct, including physical assault and threats. (A502 – A506). During that testimony, defense

7

counsel objected to admission of certain out-of-court statements on hearsay and Confrontation Clause grounds. (A487). The objections were overruled.

The Government also introduced email communications attributed to Dr. Ballina. Defense counsel objected on hearsay and Confrontation Clause grounds. (A488). The District Court overruled the objections and permitted the emails to be read to the jury.

In addition, Government witnesses testified that the charged items were "defense articles" on the United States Munitions List and that export without authorization was "illegal." Defense counsel objected to portions of this testimony as improper legal conclusions. (A497). The objections were overruled.

**E.    Jury Instructions and Verdict**

At the charge conference, defense counsel objected to certain proposed instructions, including the instruction on false exculpatory statements and the formulation of the export-control instructions for Count Four. (A148).

The District Court instructed the jury, including Instruction 16 concerning false exculpatory statements and instructions defining the elements of the export offenses. (A172).

The jury returned guilty verdicts on all counts. (A110).

**F.    Sentencing**

Prior to sentencing, Mr. Roggio submitted a written Sentencing Memorandum objecting to, among other things, application of U.S.S.G. § 2A4.1 as the most analogous guideline for the torture counts; the application of a serious bodily injury enhancement; a four-level enhancement under § 2A4.1(b)(4)(A) based on detention exceeding thirty days; and an aggravating-role enhancement under § 3B1.1. (A230-A231).

At the sentencing hearing, defense counsel renewed those objections. (A230-A231). The District Court overruled the objections, calculated the advisory Guidelines range using § 2A4.1, and imposed a term of imprisonment. Id. Judgment was entered on April 15, 2024. (A319). This appeal followed.

## **STATEMENT OF RELATED CASES**

Counsel is not aware of any prior or pending proceedings in this Court or any other court that would affect this Court's decision in the instant appeal.

## SUMMARY OF ARGUMENT

The judgment should be vacated for multiple independent reasons.

First, the warrantless seizure and comprehensive forensic search of Mr. Roggio's electronic devices at JFK Airport violated the Fourth Amendment. Agents conducted a pre-planned criminal investigative search, transported the devices off-site, and performed a full digital extraction without first obtaining a warrant. The border search exception does not authorize a suspicionless, off-site forensic search conducted for general law-enforcement purposes unrelated to border integrity. Under Riley v. California and this Court's border-search jurisprudence, the search was nonroutine, highly intrusive, and constitutionally unreasonable. The digital evidence obtained through that search formed a substantial portion of the Government's case.

Second, the District Court erred in admitting extensive testimony concerning alleged prior acts of violence under an "intrinsic evidence" theory. The challenged testimony was not necessary to explain the charged offenses and instead functioned as impermissible character evidence. The court did not meaningfully apply Federal Rule of Evidence 404(b) or conduct appropriate Rule 403 balancing. The error was compounded by the absence of a limiting instruction governing the jury's use of the evidence.

11

Third, the District Court violated the Confrontation Clause in two respects. It permitted a witness to relay accusatory out-of-court statements under a "description" rationale and admitted testimonial email communications of a non-testifying declarant under a "context" theory. In both instances, the jury was exposed to substantive accusatory content without the opportunity for cross-examination, contrary to the Sixth Amendment.

Fourth, the court permitted Government witnesses to provide legal-conclusion testimony that the charged items were "defense articles" requiring a license and that export without authorization was "illegal." By allowing witnesses to supply statutory elements in conclusory form, the court permitted expert and lay testimony to intrude upon the jury's role and the court's duty to instruct on the law.

Fifth, the jury instructions were erroneous in two independent ways. The instruction on false exculpatory statements permitted the jury to infer consciousness of guilt from Mr. Roggio's explanation to law enforcement, notwithstanding that the statement reflected his substantive defense. Additionally, the charge constructively amended Count Four by broadening the bases for conviction beyond those charged by the grand jury.

Even if no single error independently requires reversal, the cumulative effect of the trial errors deprived Mr. Roggio of a fair trial.

Finally, the sentence was procedurally erroneous. The District Court selected U.S.S.G. § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint) as the most analogous guideline for the torture counts, applied enhancements for serious bodily injury and detention exceeding thirty days, and imposed an aggravating-role adjustment. Each determination was contested in the Sentencing Memorandum and at the hearing. The resulting Guidelines range was materially affected. At minimum, resentencing is required.

For these reasons, the convictions should be vacated and the matter remanded for further proceedings.

# ARGUMENT

## I. THE WARRANTLESS SEIZURE AND FORENSIC SEARCH OF MR. ROGGIO'S ELECTRONIC DEVICES VIOLATED THE FOURTH AMENDMENT

### A. **Issue Presented**

Whether the Fourth Amendment permits federal agents, pursuant to a pre-planned criminal investigation, to seize a traveler's electronic devices at the border, transport them off-site, conduct a comprehensive forensic extraction without a warrant, and only afterward seek judicial authorization.

### B. **Standard of Review**

This Court reviews the District Court's legal conclusions de novo and its factual findings for clear error. United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006). Whether a search falls within the border search exception, and whether a warrant was constitutionally required before conducting a forensic examination of digital devices, are questions of law reviewed de novo.

Mr. Roggio preserved this issue by filing a pretrial motion to suppress the seizure and forensic search of his electronic devices, litigating the issue at an evidentiary hearing, and obtaining an adverse ruling from the District Court. (*See* A072; A311; A092).

The constitutional question is therefore fully preserved for appellate review.

### C. **Governing Law**

14

The Fourth Amendment protects individuals against unreasonable searches and seizures.

Although searches at the international border are subject to a limited exception to the warrant requirement, that exception is rooted in the sovereign's interest in regulating entry and preventing contraband from entering the United States. United States v. Ramsey, 431 U.S. 606, 616 (1977).

The Third Circuit distinguishes between routine border searches, which require no suspicion, and nonroutine searches, which require at least reasonable suspicion. United States v. Whitted, 541 F.3d 480, 485 (3d Cir. 2008). The classification turns on the degree of intrusion and the privacy interests implicated.

In Riley v. California, 573 U.S. 373 (2014), the Supreme Court held that comprehensive searches of digital devices generally require a warrant because such devices contain vast quantities of highly personal information and implicate uniquely heightened privacy concerns.

The reasonableness of a seizure also depends on its scope and duration. United States v. Montoya de Hernandez, 473 U.S. 531, 541–42 (1985).

    D. **Argument**

        i. **A Warrant Was Required Before Conducting a Comprehensive Forensic Search of Mr. Roggio's Digital Devices**

Riley fundamentally altered the constitutional analysis of digital searches. The Court rejected analogies between cell phones and physical containers and held that the immense storage capacity and intimate nature of digital data require prior judicial authorization absent exigency.

The suppression record confirms that agents conducted a full forensic examination of Mr. Roggio's devices after seizing them at JFK. (A408 – A410) (testimony describing forensic extraction process). The devices were transported to a Homeland Security forensic laboratory for analysis. (A408, A497).

The search yielded extensive email communications and digital data later introduced at trial. (A433).

This was not a cursory inspection at the airport. It was a comprehensive digital excavation of Mr. Roggio's electronic life.

Nothing about the border diminishes the privacy interests identified in Riley. Digital data does not become less personal because a traveler crosses an international boundary.

Nor was there exigency. Agents had been investigating Mr. Roggio prior to his arrival and were aware of his travel in advance. (A357) (testimony regarding advance knowledge of arrival and coordination for secondary screening). They had ample opportunity to seek a warrant before his arrival or immediately upon seizure.

Instead, agents conducted the forensic search first and only later sought judicial authorization. (A410) (testimony regarding timing of warrant application after forensic review began).

The Fourth Amendment requires the opposite sequence.

Because the Government conducted a comprehensive forensic search without first obtaining a warrant, the search violated the Fourth Amendment.

### ii. <u>Even If a Warrant Is Not Categorically Required at the Border, This Forensic Search Was Nonroutine and Required at Least Reasonable Suspicion</u>

Under <u>Whitted</u>, nonroutine border searches require at least reasonable suspicion.

The suppression testimony established that agents did not merely conduct a manual review at JFK. Instead, the devices were seized, transported off-site, and subjected to a forensic extraction using specialized tools. (A372, A409-A410).

Such a forensic extraction exposes years of communications, digital history, and personal information. The scope and depth of the search far exceeded traditional border inspections.

Under any functional application of <u>Whitted's</u> intrusion-based framework, this search was nonroutine.

At a minimum, therefore, reasonable suspicion was required.

### iii. <u>The Government Lacked Reasonable Suspicion Tethered to Border Concerns</u>

17

Reasonable suspicion requires a particularized and objective basis for suspecting criminal activity.

The suppression record reflects that the investigation concerned alleged historical export conduct. (A390-A392) (testimony describing scope of investigation prior to border stop). There was no testimony that agents suspected Mr. Roggio was importing contraband into the United States on the date of his arrival.

No arrest warrant had been obtained. No search warrant had been sought prior to entry. (A448).

The suspicion articulated by agents related to past conduct under investigation, not to any immediate border-security concern.

The border search exception is justified by the sovereign's interest in preventing contraband from entering the country. It is not a generalized criminal-investigation exception.

Using the border as a strategic opportunity to conduct a warrantless forensic search for evidence of past conduct untethered to entry-related concerns exceeds the rationale of the exception.

### iv.  The Prolonged Off-Site Forensic Examination Independently Violated the Fourth Amendment

Even if an initial inspection at JFK were permissible, the subsequent seizure and weeks-long forensic analysis were constitutionally distinct.

Mr. Roggio was referred for a secondary inspection upon arrival at JFK airport on February 26, 2017. (A321). Mr. Roggio was permitted to leave the airport, but his devices were not returned. (A329, A411).

The devices were transported to a forensic laboratory outside the airport environment. (A372-A373).

Agents conducted a forensic examination of the electronic devices *before* seeking judicial authorization. (A468).  The Government agents testified that they sought a search warrant for the electronic devices despite not needing a warrant at that time. (A468).

The reasonableness of a seizure depends on its duration and scope. Montoya de Hernandez, 473 U.S. at 541–42. A prolonged detention detached from immediate border functions requires heightened justification.

There was none here.

The Government cannot bootstrap a month-long forensic mining operation into the border exception merely because the seizure originated at an airport.

### v.  The Error Was Prejudicial

19

The digital evidence obtained from the forensic search formed a substantial part of the Government's proof at trial, including emails and other communications introduced through forensic extraction reports. (A358, A390).

Suppression of that evidence would have materially altered the evidentiary landscape.

Because the seizure and forensic search violated the Fourth Amendment, the resulting evidence should have been excluded. The convictions resting upon that evidence must be vacated.

## II.  THE DISTRICT COURT ABUSED ITS DISCRETION BY ADMITTING EXTENSIVE, GRAPHIC EVIDENCE OF UNCHARGED VIOLENT CONDUCT UNDER A MISAPPLIED "INTRINSIC EVIDENCE" THEORY, IN VIOLATION OF FED. R. EVID. 404(b) AND 403

### A.  **Issue Presented**

Whether the District Court erred by permitting the Government to present to the jury inflammatory evidence of uncharged violent conduct under an "intrinsic evidence" theory, without applying a meaningful balancing test pursuant to Rule 403 or applying Rule 404(b)'s safeguards.

### B.  **Standard of Review**

A district court's evidentiary rulings are reviewed for abuse of discretion. United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017). Whether evidence is properly characterized as "intrinsic," and therefore outside the scope of Rule

404(b), is a legal question reviewed de novo. United States v. Green, 617 F.3d 233, 239–40 (3d Cir. 2010).

A district court abuses its discretion when it applies an incorrect legal standard, fails to perform the required analytical steps, or admits evidence whose unfair prejudice substantially outweighs its probative value under Rule 403. United States v. Morena, 547 F.3d 191, 196–98 (3d Cir. 2008).

C. **Governing Law**

Rule 404(b)(1) bars evidence of "other crimes, wrongs, or acts" offered to prove a defendant's propensity—i.e., that he acted "in accordance with" a bad character. Fed. R. Evid. 404(b)(1). When the government seeks to admit other-acts evidence for a purportedly permissible purpose, the court must ensure:

1. The evidence is offered for a proper non-propensity purpose;

2. The evidence is relevant to that purpose;

3. Its probative value is not substantially outweighed by unfair prejudice under Rule 403; and

4. Upon request, a limiting instruction is given.

United States v. Caldwell, 760 F.3d 267, 276–77 (3d Cir. 2014).

The Third Circuit has sharply limited the "intrinsic evidence" doctrine because it is often misused as a shortcut around Rule 404(b)'s safeguards. Under Green, evidence is intrinsic only if it: (1) directly proves the charged offense; or

(2) consists of uncharged acts performed contemporaneously with the charged crime that facilitate its commission.  <u>Green</u>, <u>617 F.3d at 248</u>–49; <u>United States v. Cross</u>, <u>308 F.3d 308, 320</u> (3d Cir. 2002). Evidence is not intrinsic merely because it helps "complete the story," illustrates "control," or makes the narrative more compelling; those rationales are precisely why Rule 404(b) exists. <u>Green</u>, <u>617 F.3d at 249</u> (warning against "complete the story" theories that collapse Rule 404(b)).

Even when evidence has some probative value, Rule 403 requires exclusion if the danger of unfair prejudice substantially outweighs that value. <u>Fed. R. Evid. 403</u>. The Third Circuit has repeatedly emphasized that graphic violence carries a uniquely high risk of unfair prejudice and requires careful limitation or exclusion. <u>Morena</u>, <u>547 F.3d at 196</u>–98; <u>United States v. Guerrero</u>, <u>803 F.2d 783, 786</u> (3d Cir. 1986).

### D. <u>The Government Justified Uncharged Violence as "Intrinsic," then Presented it to the Jury as a Violent-Character Narrative</u>

Outside the jury's presence, defense counsel objected that the Government intended to elicit testimony concerning uncharged violent conduct—employees held at gunpoint and other violent incidents—and urged exclusion under Rules 404(b) and 403. The Government responded that the evidence was "an intrinsic part of the story," offered to show how Roggio "intimidated and threatened his employees," and to establish "the power he had and the fear these witnesses had." (A491). The Government also acknowledged that Elina Kadaja would not testify,

but asserted other witnesses would testify that Roggio "pointed a gun at them or put a gun to their head." (A491).

That "control/fear" rationale does not fit <u>Green's</u> narrow definition of intrinsic evidence. It does not directly prove the charged offenses; it is not contemporaneous facilitation. It is classic other-acts material offered to portray Roggio as violent and coercive, inviting the forbidden inference that he acted in conformity with that character in connection with the charged conduct. Post-offense intimidation designed to silence or control witnesses is *not* facilitation of the charged crime under <u>Green</u>.

The court's ruling was not merely theoretical. In front of the jury, the Government elicited testimony that a witness saw Roggio "beating Elina," prompting defense counsel to object that this was the previously litigated "Bad Acts" issue. The court overruled the objection and allowed the testimony to continue. (A491 A498).

The Government then elicited an extended narrative of gun-point intimidation and threats. The witness testified Roggio was "aiming with a gun" and that the gun was aimed at the witness ("Me"), who believed he would be "dead soon." (A503).

The jury also heard another witness testify that Roggio "started drilling us at gun point," struck Elina "in front of us," and threatened them with death and burial

23

in the mountains: "if I shoot you, I will bury you in the mountains … nobody would ever know that you're gone." (A505).

This evidence was inflammatory and operated as a character narrative of violence and domination, not as proof of the elements of the charged offenses. Under <u>Green</u> and <u>Caldwell</u>, it was extrinsic other-acts evidence and should have been subjected to Rule 404(b)'s safeguards and rigorous Rule 403 limitation.

### E.  <u>The District Court Failed to Apply the Required Rule 404(b) Framework and Failed to Meaningfully Enforce Rule 403</u>

The Government's own framing confirms the nature of the evidence: it was offered to prove "intimidat[ion]," "power," and "fear." (A494-A405). Those rationales are, at minimum, propensity-adjacent and narrative-driven; they are not a substitute for the Rule 404(b) analysis <u>Green</u> requires.

Moreover, the record reflects the court permitted the "bad acts" testimony to unfold in front of the jury and overruled the defense objection when the evidence began coming in. (A505). In a case where the Government presented repeated gun-point threats and vivid death/burial threats (A505-A506), Rule 403 required careful judicial limitation and balancing on the record, particularly given the highly inflammatory nature of the evidence. The admission of this material without meaningful restriction allowed the jury to decide guilt through moral condemnation and emotional reaction rather than proof beyond a reasonable doubt. <u>Morena</u>, <u>547 F.3d at 196</u>–98.

This evidence was not peripheral. It portrayed Roggio as a violent, gun-wielding figure who controlled employees through fear and threats of death. That portrayal was not necessary to prove the elements of the charged offenses. It invited precisely the inference Rule 404(b) forbids: that because Roggio was violent and domineering, he must have committed the charged crimes.

### F. <u>The Error Was Not Harmless</u>

The Government used uncharged violence to portray Roggio as a person who exercised control through threats and fear—precisely the kind of generalized propensity inference Rule 404(b) forbids. The jury heard that Roggio aimed a gun at a witness who believed he would be "dead soon" (A503) and heard a detailed account of gun-point "drilling," striking Elina "in front of us," and explicit death-and-burial threats (A505). The uncharged bad act evidence was used to strengthen that narrative—portraying Roggio as someone who exercised power through threats and intimidation.  In a case that turned significantly on credibility and inferences about intent, admitting repeated, emotionally charged violent conduct created a substantial risk that the verdict rested on propensity reasoning rather than proof of the charged elements.

Under <u>Repak</u> and <u>Lee</u>, where improperly admitted evidence bears directly on contested issues and risks influencing credibility determinations, harmlessness

cannot be assumed. <u>United States v. Repak</u>, <u>852 F.3d 230, 244</u> (3d Cir. 2017);

<u>United States v. Lee</u>, <u>612 F.3d 170, 186</u>–87 (3d Cir. 2010).

Reversal is the only remedy.

## III. THE DISTRICT COURT FAILED TO GIVE A MEANINGFUL LIMITING INSTRUCTION GOVERNING THE JURY'S USE OF THE UNCHARGED VIOLENCE

### A. **Issue Presented**

Whether the District Court compounded the Rule 404(b)/403 error by failing to provide a meaningful limiting instruction to prevent the jury from using the uncharged violent conduct as propensity evidence.

### B. **Standard of Review**

The failure to give a limiting instruction is reviewed for abuse of discretion. <u>Caldwell</u>, <u>760 F.3d at 277</u>–78. Where the absence of a limiting instruction permits the jury to use highly prejudicial evidence for an impermissible propensity purpose, the error weighs heavily in the harmless-error analysis. <u>Caldwell</u>, <u>760 F.3d at 277</u>–78; <u>Morena</u>, <u>547 F.3d at 197</u>–98.

### C. **Governing Law**

When evidence is admitted for a limited purpose—particularly evidence of uncharged misconduct—the district court must take affirmative steps to ensure the jury does not use the evidence for impermissible propensity reasoning. <u>Fed. R. Evid. 105</u>. In the context of Rule 404(b), the Third Circuit has repeatedly

26

emphasized that a limiting instruction is not a formality; it is a critical safeguard against unfair prejudice. Caldwell, 760 F.3d at 277–78; United States v. Davis, 726 F.3d 434, 442–44 (3d Cir. 2013).

This requirement is especially strict where the evidence involves violence, threats, or emotionally charged conduct, because such evidence carries an unusually high risk that jurors will draw forbidden character inferences. Morena, 547 F.3d at 197–98. In such cases, the absence of a limiting instruction "magnifies the prejudicial effect of the evidence and increases the likelihood that the jury will convict for reasons unrelated to the charged conduct." Id.

### D. **Argument**

Here, the jury heard extensive testimony concerning uncharged violent conduct - conduct that the Government itself acknowledged was prejudicial and unrelated to the charged offenses. (A493). In addition to the District Court failing to conduct a meaningful balancing test pursuant to Rule 403, the Court then failed to provide a contemporaneous limiting instruction explaining how the jury could— and could not—use the evidence. (A501-A502).

Other than the generic guidance found in the standard jury instructions, the Jury was not contemporaneously instructed or specifically instructed that it could not use the uncharged violence to conclude that Roggio had a violent character or that he acted in conformity with that character during the charged conduct.  In a

case involving emotionally charged allegations, the absence of such guidance magnified the prejudicial effect of the evidence. The Third Circuit has made clear that limiting instructions are a critical safeguard in the Rule 404(b) context, not a mere formality. Caldwell, 760 F.3d at 277–78. At minimum, the failure to provide a meaningful limiting instruction materially amplified the prejudice flowing from the erroneous admission of the uncharged conduct.

## IV.   THE DISTRICT COURT VIOLATED THE SIXTH AMENDMENT CONFRONTATION CLAUSE BY ADMITTING OUT-OF-COURT ACCUSATORY CONTENT THROUGH SURROGATE TESTIMONY

### a.   Issue Presented

Whether the District Court violated the Confrontation Clause by allowing the Government to place accusatory content before the jury through out-of-court communications—under a "description of what happened" rationale—without permitting cross-examination of the declarant.

### b.   Standard of Review

Confrontation Clause issues are reviewed de novo. Crawford v. Washington, 541 U.S. 36, 59 (2004). If a violation occurred, the Government must prove harmlessness beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 680–81 (1986); United States v. Jimenez, 513 F.3d 62, 77–79 (3d Cir. 2008).

### c.   Governing Law

The Sixth Amendment bars admission of testimonial out-of-court statements offered for their truth unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine. <u>Crawford</u>, <u>541 U.S. at 59</u>. The Third Circuit rejects efforts to "launder" accusatory information through a surrogate witness under labels such as "context," "background," or "state of mind" when the jury must accept the statement's truth to use it as the Government intends. <u>United States v. Hinton</u>, <u>423 F.3d 355, 361</u>–63 (3d Cir. 2005); <u>United States v. Price</u>, <u>458 F.3d 202, 210</u>–11 (3d Cir. 2006); <u>United States v. Sallins</u>, <u>993 F.2d 344, 346</u>–47 (3d Cir. 1993).

### d.  <u>Argument</u>

During jury testimony about the employees' final night in Iraq, the Government elicited that "Heret called us that Ross is there." Defense objected on hearsay. The Government responded "not for the truth," and the court overruled, reasoning: "Heret called us. That's not an out-of-court statement, it's simply, a description of what happened." (A502).

That ruling permitted the Government to place before the jury the critical predicate that Roggio was present and posed a danger, through an out-of-court communication, while insulating the declarant from cross-examination. In context, the Government was simultaneously deploying uncharged gun/violence evidence to establish "fear" and "control" (A493, A501, A504). The combined effect was to

corroborate and intensify the intimidation narrative through uncross-examined accusatory content.

The Confrontation Clause does not allow the Government to introduce accusatory information in a form that effectively requires the jury to accept its truth, while depriving the defense of cross-examination. Sallins, 993 F.2d at 346–47; Price, 458 F.3d at 210–11. The admission of this out-of-court accusatory content, especially in a case where fear and control were central themes, violated the Sixth Amendment.

### e. **Harmlessness**

Because constitutional error is reviewed under the Van Arsdall standard, the Government bears the burden to show harmlessness beyond a reasonable doubt. Van Arsdall, 475 U.S. at 680–81. Given the Government's reliance on "fear/control" narrative evidence, and the court's rulings allowing both highly inflammatory uncharged violence and out-of-court accusatory content, the Government cannot meet that burden.

## V.    THE DISTRICT COURT VIOLATED THE CONFRONTATION CLAUSE BY ADMITTING TESTIMONIAL EMAILS OF A NON-TESTIFYING DECLARANT UNDER A "CONTEXT" RATIONALE

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." U.S. Const. amend. VI. Under Crawford v. Washington, testimonial statements of

a witness absent from trial are admissible only where the declarant is unavailable and the defendant had a prior opportunity to cross-examine. 541 U.S. 36, 68 (2004).

That rule was violated here.

## A. The Government Introduced a Three-Page Extraction Report Containing Emails from a Non-Testifying Declarant

During its case-in-chief, the Government offered Exhibit 20.9, described as "an extraction report from one of our forensics specific to a laptop computer taken from Mr. Roggio." (A456-A458). Defense counsel immediately objected on the basis of hearsay and the confrontation clause. (A456-458).

The District Court overruled the objection, reasoning that Mr. Roggio's statements were admissions and that Dr. Ballina's statements were admissible to provide "context." (A456-458). The emails were then read to the jury. (A456-458).

Dr. Ravi Ballina did not testify and was not subjected to cross-examination. The jury nonetheless heard his side of the exchange in full.

## B. The "Context" Theory Cannot Override Crawford

The Government did not contend that Dr. Ballina was unavailable or that there had been any prior opportunity for cross-examination. Instead, the District Court admitted his statements under a "context" rationale. (A488 – A489).

The Third Circuit has repeatedly rejected the use of "context" or "background" as a vehicle to introduce otherwise inadmissible testimonial hearsay. In United States v. Sallins, 993 F.2d 344, 346–48 (3d Cir. 1993), this Court held that out-of-court accusatory statements may not be admitted under the guise of "background" where they effectively place before the jury the substance of an accusation. Likewise, in United States v. Price, 458 F.3d 202, 210–11 (3d Cir. 2006), the Court made clear that testimonial statements cannot be admitted merely because they provide context for admissible evidence.

In United States v. Hinton, 423 F.3d 355, 360–61 (3d Cir. 2005), this Court emphasized that the Government may not evade Crawford by introducing testimonial statements for an ostensibly non-hearsay purpose where the jury will inevitably consider them substantively.

That is precisely what occurred here.

The Ballina emails were not limited to neutral framing language necessary to render Mr. Roggio's statements intelligible. They were admitted wholesale and read to the jury. (A490).

The jury was exposed to Dr. Ballina's factual assertions and positions. Nothing in the Court's ruling limited their consideration. No instruction directed the jury to disregard the truth of his statements.

The "context" label cannot sanitize testimonial hearsay.

32

## C. <u>The Emails Were Testimonial and Used Substantively</u>

These were documentary communications extracted during a federal criminal investigation and introduced at trial as part of the Government's proof regarding firearm components and related transactions.

Under <u>Crawford</u>, statements are testimonial where they are formal communications or made under circumstances in which an objective witness would reasonably expect them to be used prosecutorially. <u>541 U.S. at 51</u>–52.

Here, the emails were not casual remarks offered incidentally. They were introduced as substantive evidence supporting the Government's theory of export-related conduct. The extraction report itself was prepared for evidentiary use in this prosecution.

Once read into the record, the jury could not realistically compartmentalize Dr. Ballina's assertions as mere "context." The natural and inevitable effect was substantive consideration.

The Confrontation Clause prohibits that result.

## D. <u>The Error Was Not Harmless Beyond a Reasonable Doubt</u>

The Government relied extensively on digital communications extracted from Mr. Roggio's devices to establish the export and related counts.

The Ballina emails were introduced during that evidentiary phase and formed part of the documentary narrative presented to the jury.

33

Because:

1.  The objection was preserved,

2.  The Court expressly overruled it on constitutional grounds,

3.  The declarant did not testify,

4.  The emails were read verbatim to the jury,

the Government bears the burden of demonstrating harmlessness beyond a

reasonable doubt. Hinton, 423 F.3d at 361.

Given the centrality of digital communications to the Government's proof

and the cumulative evidentiary errors permeating the trial, that burden cannot be

met.  The convictions affected by this constitutional violation must be vacated.

## VI.    THE DISTRICT COURT ERRED BY GIVING A FALSE-EXCULPATORY-STATEMENT INSTRUCTION THAT IMPROPERLY PERMITTED THE JURY TO TREAT A CONTESTED DEFENSE EXPLANATION AS CONSCIOUSNESS-OF-GUILT EVIDENCE

### a.  Issue Presented

Whether the District Court erred in instructing the jury that it could treat Mr.

Roggio's explanation to law enforcement at JFK as a "false exculpatory statement"

evidencing consciousness of guilt, where the statement constituted his substantive

defense to the charged export offenses and was not independently shown to be

demonstrably false.

### b.  Standard of Review

Whether a jury instruction correctly states the law is reviewed de novo. United States v. Kemp, 500 F.3d 257, 296 (3d Cir. 2007). A district court abuses its discretion when it gives an instruction lacking an evidentiary foundation or one that risks misleading the jury as to the governing legal standards. United States v. Johnson, 302 F.3d 139, 150–51 (3d Cir. 2002).

Where an instructional error affects the jury's consideration of a central issue such as intent, reversal is required unless the Government can establish that the error was harmless. United States v. Lee, 612 F.3d 170, 186–87 (3d Cir. 2010).

### c. **Governing Law**

The Third Circuit permits a "false exculpatory statement" instruction only where there is evidence that:

1. The defendant made a statement;

2. The statement was demonstrably false;

3. The falsity concerned a material matter; and

4. The falsity supports a reasonable inference of consciousness of guilt.

Kemp, 500 F.3d at 296–97; Johnson, 302 F.3d at 150–51.

The instruction is improper where the statement is merely a denial of guilt, is ambiguous, or where falsity depends entirely on the jury accepting the Government's version of disputed facts. A court must avoid converting a

defendant's substantive defense into affirmative evidence of guilt through a consciousness-of-guilt inference.

### d.  Argument

#### i.  The Instruction Singled Out Mr. Roggio's Substantive Defense Explanation

In Instruction 16, the Court told the jury that it had heard testimony that Mr. Roggio made statements to law enforcement claiming his conduct was consistent with innocence, that the Government contended those statements were false, and that if the jury found he knowingly made a false statement to divert suspicion, it could consider that as evidence of consciousness of guilt. (A172). The Court did not leave the instruction abstract. It *specifically* identified the statement at issue. (A172).

That explanation was not a collateral fabrication. It was the central defense theory regarding intent and the nature of the shipment underlying the export charges. By highlighting that explanation and authorizing the jury to treat it as potential consciousness-of-guilt evidence, the instruction risked converting a contested defense into affirmative proof of guilt.

#### ii.  The Government Did Not Establish Independent Falsity as Required

A false-exculpatory instruction requires a predicate showing that the statement was demonstrably false. Kemp, 500 F.3d at 296–97.

Here, whether the shipment related to legitimate construction activity or prohibited weapons production was the ultimate issue in dispute. The Government argued that the items were intended for unlawful purposes; the defense argued otherwise. The purported "falsity" of the JFK statement thus depended entirely on the jury first accepting the Government's theory of the case.

That circular structure is precisely what the Third Circuit has cautioned against. If the jury must decide the core issue—intent and purpose—before determining whether the statement was false, the instruction effectively invites the jury to reason:

- If the Government is correct, the statement was false.

- If the statement was false, that shows consciousness of guilt.

- Consciousness of guilt supports the Government's case.

Such reasoning collapses the presumption of innocence and improperly amplifies the Government's proof through a duplicative inference.

### iii.  **The Instruction Risked Judicial Endorsement of the Government's Theory**

The Court's specific reference to the JFK explanation carried an additional danger: it singled out particular testimony for special treatment. While the instruction included language that innocent persons may make false statements for various reasons, the practical effect was to tell the jury that this identified defense explanation could be treated as evidence of guilt.

37

The Third Circuit has cautioned against instructions that risk emphasizing selected pieces of evidence in a way that may suggest judicial endorsement. *See* Johnson, 302 F.3d at 150. Here, where intent was the central contested issue, the instruction permitted the jury to treat disagreement with the defense explanation as affirmative proof of guilt.

### iv.  The Error Was Not Harmless

The export-control counts turned heavily on intent and purpose. Mr. Roggio's explanation at JFK went directly to that issue. By instructing the jury that it could treat the explanation as consciousness-of-guilt evidence if found false, the Court added an additional inference supporting the Government's theory.

In a case dependent on competing interpretations of intent, that inference was powerful. Because the instruction directly affected the jury's evaluation of a central defense theory, the Government cannot demonstrate that the error was harmless. Lee, 612 F.3d at 186–87.

## VII.  THE DISTRICT COURT CONSTRUCTIVELY AMENDED COUNT FOUR BY AUTHORIZING CONVICTION ON THEORIES NOT CHARGED BY THE GRAND JURY

### a.  Issue Presented

Whether the District Court constructively amended Count Four of the Superseding Indictment by instructing the jury that it could convict if Mr. Roggio

"retransferred," "furnished," or "caused to be exported" defense articles, where the grand jury charged only that he "exported and attempted to export" those items.

### b.  Standard of Review

Whether a constructive amendment occurred is a question of law reviewed de novo. United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006). A constructive amendment of the indictment violates the Fifth Amendment and is per se reversible error. United States v. Miller, 471 U.S. 130, 138–40 (1985); United States v. Syme, 276 F.3d 131, 148 (3d Cir. 2002).

### c.  Governing Law

The Fifth Amendment guarantees that a defendant may be tried only on charges returned by a grand jury. U.S. Const. amend. V.

A constructive amendment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or court after the grand jury has last passed upon them." Daraio, 445 F.3d at 259. The error arises when the jury is permitted to convict on a basis broader than that charged in the indictment. Syme, 276 F.3d at 148.

The Third Circuit has consistently held that where a jury instruction authorizes conviction on an alternative theory not contained in the indictment, a constructive amendment has occurred. Id.; United States v. Castro, 776 F.2d 1118, 1121–22 (3d Cir. 1985).

39

### d. **Argument**

#### i. **Count Four Charged Only "Export" and "Attempt to Export"**

Count Four of the Superseding Indictment charged that Mr. Roggio:

> "did willfully export and attempt to export from the United States to Iraq defense articles… specifically, M4/M16 gas rings and M4/M16 firing pin retainers… without having first obtained a license…"

(A034).

The operative verbs charged by the grand jury in the Superseding Indictment were limited to: *export*; and *attempt to export*. (A034).

The indictment did <u>not</u> charge "retransfer," "furnish," or "cause to be exported."

#### ii. **The Jury Was Instructed on Broader, Additional Theories**

In its final instructions, the District Court first recited the broader statutory language of the Arms Export Control Act, stating that it is unlawful to:

> "export or attempt to export, retransfer, furnish or cause to be exported" defense articles without a license.

(A189-A190).

More significantly, when instructing the jury specifically on Count Four, the Court told the jury it could convict if it found that Mr. Roggio: "exported, attempted to export, retransferred, furnished or caused to be exported" the defense articles to Iraq. (A189).

40

This instruction authorized conviction on three additional verbs not charged in the indictment:

- retransferred

- furnished

- caused to be exported

Defense counsel objected at the charge conference, expressly arguing that the proposed instruction "enlarged" the indictment language and requesting that the charge conform to the wording of Count Four. (A134).

The Court overruled the objection and delivered the broader instruction.

### iii.  <u>The Instruction Effectively Altered the Charging Terms</u>

The difference between the indictment and the instruction is not semantic. The grand jury limited Count Four to two theories: export and attempt to export. The instruction expanded the basis for conviction to include furnishing, retransferring, or causing export.

Those verbs are not merely definitional clarifications. They constitute distinct modes of violating the statute. By authorizing conviction on those additional theories, the court permitted the jury to convict Mr. Roggio on a basis not passed upon by the grand jury.

The constitutional violation is not cured by the fact that the broader verbs appear in the statute. The question is not whether the statute contains additional

language, but whether the grand jury charged those additional theories. Miller, 471 U.S. at 138–40; Syme, 276 F.3d at 148.

Here, it did not.

### D. **The Amendment Was Structural and Requires Reversal**

Constructive amendment is a structural Fifth Amendment error because it undermines the grand jury's role in defining the charges. Syme, 276 F.3d at 148–49. The defendant's substantial rights are affected when the jury is permitted to convict on an uncharged theory.

This is not a case of mere evidentiary variance. The jury was *explicitly* instructed that it could convict based on conduct not alleged in Count Four. Because the charging terms were broadened in effect, the conviction on Count Four must be vacated.

## VIII. THE DISTRICT COURT PERMITTED THE GOVERNMENT TO PROVE ESSENTIAL ELEMENTS OF THE EXPORT COUNTS THROUGH IMPROPER LEGAL-CONCLUSION TESTIMONY, IN VIOLATION OF FEDERAL EVIDENCE RULES AND THE FIFTH AND SIXTH AMENDMENTS

### a. **Issue Presented**

Whether the District Court erred by allowing Government witnesses to testify that the charged items were "defense articles" requiring a license and that export without authorization violated federal law—thereby supplying legal

conclusions on essential statutory elements—without proper expert foundation or limiting instruction.

### b.  <u>Standard of Review</u>

A district court's evidentiary rulings are reviewed for abuse of discretion. <u>United States v. Repak</u>, <u>852 F.3d 230, 240</u> (3d Cir. 2017). Whether testimony improperly states a legal conclusion or invades the province of the court and jury is reviewed de novo. <u>United States v. Hoffecker</u>, <u>530 F.3d 137, 170</u> (3d Cir. 2008).

If an instructional or evidentiary error affects the jury's determination of an essential element, reversal is required unless the Government proves the error harmless. <u>United States v. Lee</u>, <u>612 F.3d 170, 186</u>–87 (3d Cir. 2010).

### c.  <u>Governing Law</u>

It is fundamental that the Court instructs the jury on the law, while witnesses testify to facts. A witness may not "express legal conclusions or tell the jury what result to reach." <u>Hoffecker</u>, <u>530 F.3d at 170</u>.

The Third Circuit has repeatedly warned that expert or lay testimony interpreting statutory requirements or regulatory classifications may improperly invade the province of the court. *See* <u>United States v. Leo</u>, <u>941 F.2d 181, 196</u> (3d Cir. 1991) (error to permit expert testimony interpreting legal requirements in a manner that effectively instructed the jury on the law).

43

Where regulatory interpretation defines the boundary between lawful and criminal conduct—as in prosecutions under the Arms Export Control Act ("AECA") and IEEPA—the risk of improper legal-conclusion testimony is especially acute.

### d. **Argument**

#### i. **The Government Proved the "Defense Articles" and "License Required" Elements Through Legal Conclusions.**

To convict on the AECA (22 U.S.C. §2778) and related export counts, the Government was required to prove that:

1. The items at issue were "defense articles" listed on the United States Munitions List;

2. A license or written approval was required before export;

3. The defendant acted willfully, knowing export without a license was unlawful; and

4. The items were exported or attempted to be exported.

*See* (A186).

The classification of M4 bolt gas rings, firing pin retainers, and rifling buttons as "defense articles" was not a purely historical fact. It depended upon interpretation of federal regulations, including the International Traffic in Arms Regulations ("ITAR"), and agency-administered licensing schemes.

The distinction between lawful commercial components and regulated defense articles was central to the defense theory.

### ii. **A Non-Expert Witness was Permitted to Testify that Export "is illegal" Without ITAR Approval**

Rather than require the jury to determine whether those elements were satisfied under the governing regulations, the Government elicited direct legal conclusions from two categories of witnesses: (1) a private industry witness and (2) a State Department licensing analyst.

The Government asked William Mathes, a firearms industry fact witness, about shipping restrictions on M4 gas rings and firing pin retainers. When defense counsel objected that the witness "is not an expert in the -- in ITAR," the objection was overruled. The witness then testified as follows:

> "With my 20 years' experience in this industry… it is ***illegal*** to ship any weapons components outside of the United States without an ITAR approval."

(A497).

This statement is not factual testimony about his actions.  It is a declaration of what federal law requires and whether certain conduct is "illegal" by a non-expert witness.

Under <u>Hoffecker</u>, a witness may not "express legal conclusions or tell the jury what result to reach." <u>530 F.3d at 170</u>. Yet the jury here heard, in categorical form, that shipping such components overseas "is illegal" absent ITAR approval.

The error is particularly acute because the objection specifically raised lack of expertise in ITAR.  The ruling permitted a non-expert to instruct the jury on the legality of export conduct.

### iii.  The Government's Expert, Alex Douville, Supplied Element-Satisfying Legal Classifications

The Government next presented Alex Douville, a DDTC licensing analyst, as an expert "on defense articles, the U.S.M.L., United States Munitions List, and the state department licensing process."  After qualification, Mr. Douville testified:

- An M4 rifle "is a defense article."

- M4 bolt gas rings and firing pin retainers were "contained on the United States Munitions List in 2016."

- They were controlled because they were "inherently specially designed for a defense article."

- They "would require a license to be exported from the country."

(A518-A529).

Mr. Douville's testimony tracked verbatim the elements set forth in the jury instructions.  This testimony did not merely describe regulatory background. It applied the regulation to the charged items and concluded that the statutory classification element was satisfied.

While experts may explain technical matters, they may not resolve the legal meaning of statutory terms in a way that supplants the jury's function. *See* United States v. Leo, 941 F.2d 181, 196 (3d Cir. 1991) (error where expert effectively

46

interpreted statutory requirements for the jury). As <u>Hoffecker</u> makes clear, expert testimony "that states a legal conclusion is inadmissible." <u>530 F.3d at 170</u>. When the legal classification itself defines criminality, allowing a Government witness to supply that classification risks displacing the jury's independent function.

### iv.  **The Error Was Not Harmless**

The record does not reflect a careful Rule 702 qualification process separating:

- Permissible expert testimony regarding agency practice, from

- Impermissible legal conclusions regarding statutory elements.

Nor did the Court provide a limiting instruction explaining that:

- The Court defines the law;

- The jury must determine whether the Government proved the statutory elements beyond a reasonable doubt;

- Witnesses' views on regulatory classification were not binding.

Instead, the Government's witnesses were permitted to testify in a manner that effectively resolved the "defense article" and "license required" elements for the jury.  This approach risks the precise error identified in <u>Leo</u>, where expert testimony interpreting statutory requirements was found to intrude upon the Court's role. <u>Leo</u> at 196.

Counts 4 through 6 required proof that the items were defense articles and that a license was required and not obtained. The Government's proof of those elements rested squarely on the testimony identified above.

Because the jury heard categorical legal conclusions from both a lay industry witness and a Government expert, the regulatory classification element was effectively resolved by authoritative assertion.

Where error affects the jury's determination of an essential element, reversal is required unless harmless beyond a reasonable doubt. Lee, 612 F.3d at 186–87.

Given the structure of the Government's proof and the centrality of the classification and licensing elements to multiple counts, the Government cannot carry that burden.  The convictions on Counts 4, 5, and 6 must therefore be vacated.

## IX. THE COMBINED EFFECT OF THE TRIAL ERRORS DEPRIVED MR. ROGGIO OF A FUNDAMENTALLY FAIR PROCEEDING

Even if this Court were to conclude that no single trial error independently mandates reversal, the cumulative effect of the constitutional, evidentiary, and instructional errors described above deprived Mr. Roggio of the fundamentally fair adjudication guaranteed by the Fifth and Sixth Amendments.

This Court has long recognized that "a number of errors, no one perhaps sufficient to merit reversal, in combination may necessitate the granting of a new trial." United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993). The proper

48

inquiry is not whether each ruling, viewed in isolation, might be characterized as harmless, but whether the errors collectively "had substantial influence" on the verdict or leave the Court with "grave doubt" about the fairness of the proceedings. United States v. Hill, 976 F.2d 132, 145 (3d Cir. 1992).

This was not a trial in which a single evidentiary ruling went awry. Rather, the proceedings were marked by a pattern of rulings that consistently relaxed constitutional and evidentiary safeguards in ways that reinforced one another:

- Inflammatory uncharged violence admitted under an expansive "intrinsic" theory;

- The absence of meaningful limiting instructions;

- Admission of testimonial statements from non-testifying declarants under "description" and "context" rationales;

- Element-satisfying legal conclusions presented through witness testimony; and

- An instructional charge permitting adverse inference from alleged "false exculpatory" statements.

Each error operated in the same direction: away from disciplined element-based adjudication and toward conviction by narrative force.

When viewed cumulatively, these errors substantially influenced the jury's deliberations and undermined confidence in the verdict. The Constitution requires more than a trial that is merely adequate in parts; it requires a proceeding that is fair in its totality.  A new trial is required.

49

## X.    THE DISTRICT COURT PROCEDURALLY ERRED IN CALCULATING THE GUIDELINES RANGE

A district court commits procedural error if it improperly calculates the advisory Guidelines range. Gall v. United States, 552 U.S. 38, 51 (2007). Guidelines interpretation is reviewed de novo; factual findings are reviewed for clear error. United States v. Richards, 674 F.3d 215, 220 (3d Cir. 2012). A misapplication of the Guidelines requires remand unless harmless. United States v. Langford, 516 F.3d 205, 215 (3d Cir. 2008).

Here, the court committed multiple Guidelines errors that materially increased the advisory range.  All sentencing guideline errors raised herein were preserved by trial counsel filing a Sentencing Memorandum raising the objections and addressing the objections at sentencing. (A530).

### A.    **The Court Erred in Selecting U.S.S.G. §2A4.1 (Kidnapping) Rather than §2A2.2 (Aggravated Assault) as the Applicable Guideline for Torture**

#### i.    **Issue Presented**

Whether the court misapplied the Guidelines by selecting §2A4.1 (Kidnapping, Abduction, Unlawful Restraint) instead of §2A2.2 (Aggravated Assault) for the torture counts.

#### ii.    **Governing Law**

The Appendix to the United States Sentencing Guidelines directs that five (5) different guideline sections can apply to a conviction of 18 U.S.C. §2340A –

Torture. It is the Trial Court's province to determine "which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted" *See* USSG §1B1.2 Application Note 1. The five (5) guideline sections that can apply are as follows:

      a.  2A1.1 – Murder

      b.  2A1.2 – Second Degree Murder

      c.  2A2.2 – Attempted Murder

      d.  2A2.2 – Aggravated Assault

      e.  2A4.1 – Kidnapping, Abduction, Unlawful Restraint

The Presentence Report determined that USSG §2A4.1 (Kidnapping, Abduction, Unlawful Restraint) was the most appropriate considering the conduct alleged against Roggio. (A531). Roggio suggests that USSG §2A2.2 (Aggravated Assault) is most analogous to the crime of Torture. The difference between Kidnapping and Aggravated Assault is significant.  Kidnapping has a base offense level of 32. Aggravated Assault has a base offense level of 14. *See* USSG 2A2.2.

### iii.  **Argument**

The trial court erred by concluding that kidnapping was most analogous to Torture and that the Government proved the additional element to support a finding of kidnapping.  Roggio submits that the trial court should have applied the

Aggravated Assault guideline as it did not require proof of additional elements and, as such, it is more analogous to the charged conduct.

Section 2A4.1 applies to kidnapping, abduction, and unlawful restraint. Its structure centers on the unlawful detention of a victim as the *core offense conduct*. (emphasis added). By contrast, §2A2.2 governs aggravated assault involving serious bodily injury or use of a dangerous weapon.

The Torture statute, 18 U.S.C. § 2340A, criminalizes the intentional infliction of severe physical or mental pain under color of law. The gravamen of torture is assaultive behavior that inflicts pain - *not* abduction or unlawful detention.

Here, the jury was not asked to find kidnapping or unlawful restraint as a separate offense element. The district court nevertheless treated detention as the operative conduct and determined kidnapping (§2A4.1) was more analogous to the offense conduct. That determination effectively transformed the torture counts into kidnapping offenses for Guidelines purposes.

The Sixth Circuit case of United States v. Mills, 1 F.3d 414 (6th. Cir. 1993) is instructive.  In Mills, the defendant committed a burglary of a pharmacy and, while attempting to elude law enforcement after the burglary, he lost control of his vehicle and seriously injured a law enforcement officer.  The guidelines treat pharmacy burglary (18 U.S.C. §2118) similar to Torture in that the guidelines

require the most analogous criminal conduct serve as the guideline range. The 6th Circuit determined that Burglary, and not Aggravated Assault, was more analogous to the relevant conduct. In reaching this conclusion, the court recognized that an assault occurred when the defendant seriously injured a law enforcement officer with his vehicle. However, proof of the assault was *not* needed to obtain a conviction for Pharmacy Burglary. Proof of the assault was only needed as a sentencing enhancement. Since the *gravamen* of pharmacy burglary was burglary, the Court determined the subsequent assault merely enhanced the sentence. Mills at 421.

The same analysis can be applied to the instant case. The government did not need to prove Kidnapping to obtain a conviction for Torture. On the contrary, Torture only requires the victim to be "within his (the defendant's) physical custody or control."  The "custody" or "control" that is required for a conviction of Torture need *not* be an unlawful seizure.  On the other hand, Kidnapping does require an "unlawful seizure" to obtain a conviction. *See* 18 U.S.C. §1201(a). As a result, the gravamen of the crime of Torture is *not* an unlawful seizure or unlawfully obtaining custody or control of an individual unless the act causes severe physical or mental harm. The Government has not alleged that Roggio's custodial detention of the victim was, standing alone, an act that was intended to cause severe physical or mental pain. For this reason, the gravamen of the crime of

Torture is Aggravated Assault, not Kidnapping.

The gravamen of Torture is Aggravated Assault and not Kidnapping.  As such, §2A2.2 is the more appropriate guideline since it does not require the finding of an additional element by the jury or trial court.  By selecting §2A4.1, the court materially increased the base offense level and determined the Government proved an additional element that the jury was not asked to consider. This was legal error.

**B.  <u>The Court Erred in Applying the "Serious Bodily Injury" Enhancement Under §2A4.1(b)(2)(B)</u>**

### i.  <u>Issue Presented</u>

Whether the court erred in finding that the victim sustained "serious bodily injury" as defined by the Sentencing Guidelines.

### ii.  <u>The Record</u>

Prior to sentencing, Roggio submitted a Sentencing Memorandum raising objections to the Presentence Report, thereby preserving the issue for appellate review (A530).  Roggio argued that the torture element of "severe pain" is not synonymous with the Guidelines' definition of "serious bodily injury," which requires extreme physical pain, protracted impairment, or medical intervention.

The court nevertheless applied the enhancement, concluding that the conduct involved extreme physical pain.

### iii.  <u>Governing Law</u>

The Guidelines define "serious bodily injury" as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." <u>U.S.S.G. §1B1.1, comment.</u> <u>(n.1(M))</u>.

Torture (<u>18 U.S.C. §2340A</u>) requires proof of "sever physical or mental pain."  It does *not* require proof of "extreme" physical pain.

### iv.  <u>Argument</u>

The torture statute's element of "severe pain" does not automatically satisfy the Guidelines' distinct and narrower definition. A sentencing court may not collapse the statutory element into the Guidelines definition without independent factual findings satisfying the specific criteria in §1B1.1.

The record does not establish protracted impairment or medical intervention. Nor did the court make findings distinguishing "severe pain" (statutory) from "extreme physical pain" (guidelines). Instead, it treated the jury's torture verdict as sufficient. That conflation constitutes legal error. The enhancement materially increased the offense level and thus the advisory range.

Additionally, a plain reading of <u>USSG §1B1.1</u> shows that an "injury" must be present that causes the extreme pain or impairment of a bodily function or

requiring medical intervention. In order to meet this requirement, it is insufficient to show merely infliction of extreme physical pain.  There must first be an "injury."

Roggio submits that the Government did not prove an "injury."  Likewise, the Presentence Report's speculation that the victim's injuries "would have required hospitalization if available to him" is without basis. (A538). No such testimony or evidence was elicited at trial and "probable" hospitalization does not meet criteria.  *Actual* medical intervention, such as surgery or hospitalization, is required.  There was no evidence presented at trial that would permit the sentencing court to conclude that an injury was suffered.

### C. <u>The Court Erred in Applying a Four-Level Enhancement Under §2A4.1(b)(4)(A) for Detention Exceeding Thirty (30) Days</u>

#### i.  <u>Issue Presented</u>

Whether the court erred in applying the enhancement for detention lasting more than 30 days pursuant to §2A4.1(b)(4)(A).

#### ii.  <u>Governing Law</u>

Section 2A4.1 applies to "Kidnapping, Abduction, Unlawful Restraint." Subsection (b)(4)(A) adds four levels "[i]f the victim was not released before thirty days had elapsed."

The enhancement is not free-floating. It operates within the kidnapping guideline and presumes that the defendant is criminally responsible for a detention that is unlawful in nature.

56

### iii.  **Argument**

Mr. Roggio was not charged with kidnapping. He was convicted of torture under 18 U.S.C. §2340A. Torture requires that the victim be "within [the defendant's] custody or physical control." 18 U.S.C. §2340A(1). It does not require an unlawful seizure. Lawful custody satisfies the statute.

Kidnapping, by contrast, requires an unlawful seizure or confinement. 18 U.S.C. §1201(a). The Supreme Court has long cautioned against expanding kidnapping beyond its core meaning. Chatwin v. United States, 326 U.S. 455, 464 (1946).

The Third Circuit, in Government of the Virgin Islands v. Berry, 604 F.2d 221, 227 (3d Cir. 1979), articulated limiting principles for determining whether a detention qualifies as kidnapping, including:

1. Duration of detention;

2. Whether the detention was inherent in another offense;

3. Whether the detention created independent danger;

4. Whether it occurred during the commission of a separate crime.

All Berry factors cut against application of a kidnapping-based enhancement here:

- The detention occurred during the commission of torture.

- Custody/control is inherent in torture.

- The Government did not prove an independent unlawful seizure.

- The detention itself was not charged as criminal conduct.

The District Court applied a kidnapping-duration enhancement without an appropriate judicial finding that the detention was unlawful. The District Court also failed to make explicit findings establishing that Roggio was legally responsible for the full detention period. Absent such findings, application of §2A4.1(b)(4)(A) is clearly erroneous.

### D. **The Court Erred in Applying a Sentencing Enhancement Under USSG §3B1.1 Relating to Aggravating Role in the Offense**

#### i. **Issue Presented**

Whether the court erred in applying a four-level enhancement for the Appellant's role as an organizer or leader of a criminal activity that involved five (5) or more participants or was otherwise extensive pursuant to USSG §3B1.1.

#### ii. **Governing Law**

USSG §3B1.1 provides an enhancement based on the Defendant's role in the offense. If the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, a four-level enhancement applies. The Commentary Application Notes define a "Participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.*, an undercover law enforcement officer) is not a participant."

### iii.  **Argument**

To be criminally responsible as a "participant," the individual(s) must "have committed all of the elements of the statutory crime with the requisite mens rea." United States v. Tai, 750 F.3d 309 (3d. Cir. 2014). The Government alleges that the foreign soldiers that assisted Roggio are participants.

In order for the participants to meet all of the elements of Torture (18 U.S.C. §2340A(b)(1-2), the individuals must be United States nationals or present in the United States at the time of the offense. No evidence or testimony presented at trial or sentencing proved that the alleged participants were United States nationals. Likewise, the Government alleges that the military base in Iraq where the allegations took place was not a United States Territory.  As such, the alleged participants were not in the United States at the time of the offense.  For these reasons, the Government failed to prove the existence of five (5) or more "participants" as defined by USSG §3B1.1.

## <u>CONCLUSION</u>

Mr. Roggio submits that this Court should vacate his convictions on all counts of the Superseding Indictment for the reasons set forth herein and remand the case for a new trial with evidentiary safeguards.


**Respectfully Submitted**

**By:** _____

**WILLIAM J. WATT, III, ESQUIRE**
**48 S. Main Street, Suite 300**
**Pittston, PA  18640**
**(570) 654-4643**
**Bill@SFWlawyers.com**
**PA SUPREME COURT I.D. #206831**
**CJA Panel Atty. for Ross Roggio**

## COMBINED CERTIFICATIONS

I, William J. Watt, III, Esq., hereby certify the following:

1. BAR MEMBERSHIP: I am a member of the Bar of this Court.

2. WORD COUNT: This Brief contains less than 13,000 words.

3. CERTIFICATE OF SERVICE. On this date I served a true and correct copy of APPELLANT'S BRIEF AND APPENDIX VOLUME I, and SUPPLEMENTAL APPENDIX VOLUME II both electronically and in hard copy format, pursuant to the Federal Rules of Appellate Procedure and Third Circuit Local Appellate Rules, to the following:

   Carlo D. Marchioli, Assistant United States Attorney, 235 N. Washington Ave., Scranton, PA 18503; (570) 348-2800;

4. IDENTICAL COMPLIANCE: The e-filed and hard copy format of APPELLANT'S BRIEF AND APPENDIX are Identical.

5. VIRUS CHECK: A virus check was performed on the APPELLANT'S BRIEF AND APPENDIX using Webroot SecureAnywhere Endpoint Protection v9.0.29.62 software, and no virus was detected.

I make this combined certification under penalty of perjury, under 28 U.S.C. §1746.

    _s/ William J. Watt, III_____
    William J. Watt, III, Esq.

Date: February 17, 2026